**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

ADAM MITCHELL,

                                                                Civil No. 22-490 (JRT/ECW)

                                      Plaintiff,

v.

                                                    **MEMORANDUM OPINION AND ORDER**
MICHAEL KURKOWSKI, MARCIA                **GRANTING DEFENDANTS' MOTION TO**
KURKOWSKI, DANIEL KURKOWSKI, KURKO        **DISMISS AND SHOW CAUSE ORDER**
HOMES, LLC, DROK HOLDING LLC, VSM
COMMERCIAL LLC, KURKOWSKI REAL
ESTATE CORPORATION, KURKOWSKI
PROPERTIES, LLC, and VSM REAL ESTATE,
LLC,

                                      Defendants.

---

        Jordan W. Anderson, **PARKER & WENNER, PA**, 150 South Fifth Street, Suite
        1850, Minneapolis, MN 55402, for plaintiff.

        Drew McNeill, Jack E. Pierce, and Rebecca Schiller, **BERNICK LIFSON, P.A.**,
        600 Highway 169 South, Suite 1700, Minneapolis, MN 55426, for
        defendants Michael Kurkowski, Marcia Kurkowski, Daniel Kurkowski, Kurko
        Homes, LLC, Drok Holding LLC, VSM Commercial LLC, Kurkowski Real Estate
        Corporation, and Kurkowski Properties, LLC.

        VSM Real Estate, LLC, *pro se* defendant.


        Plaintiff Adam Mitchell brought this action against defendants Michael Kurkowski;

Marcia Kurkowski; Daniel Kurkowski; Kurko Homes, LLC; Drok Holding LLC; VSM

Commercial LLC; Kurkowski Real Estate Corporation; Kurkowski Properties, LLC, and VSM

Real Estate, LLC (collectively, "Defendants") alleging that they violated the Truth in

Lending Act ("TILA") by failing to make certain disclosures when entering into a loan and an amendment to that loan with Mitchell. Mitchell also alleges the fees and interest rate Defendants charged Mitchell were excessive and usurious and that the Defendants were unjustly enriched under Minnesota law. All defendants—except VSM Real Estate, LLC— filed a Motion to Dismiss, arguing (1) Mitchell's TILA claim is barred by the statute of limitations; (2) Mitchell failed to adequately allege Defendants are creditors subject to the TILA; (3) if the Court dismisses the TILA claim, it should not exercise supplemental jurisdiction over the state law claims; and (4) if the Court exercises supplemental jurisdiction over the state law claims, Mitchell failed to adequately state a claim upon which relief can be granted.

Because the Complaint fails to adequately plead the Defendants are creditors as defined by the TILA, the Court will dismiss the TILA claim. The Court will then decline to exercise supplemental jurisdiction over the state law claims and therefore dismiss them as well. The Court, however, will stay entry of judgment on the case for thirty days to allow Mitchell to file a motion to amend. The Court will also order Mitchell to show cause within 30 days as to why the Court should not dismiss the case against VSM Real Estate, LLC, an apparently unserved defendant.

## BACKGROUND

**I.    FACTUAL HISTORY**

**A.    Mitchell's Loan**

Mitchell, a Minnesota resident, wanted to buy a house in Maple Grove, Minnesota in August 2017.  (Compl.  ¶¶ 1, 15, Feb. 25, 2022, Docket No. 1.)  He made an offer of $372,500 on a residential property and his offer was accepted by the sellers.  (*Id.* ¶ 16.) Mitchell, however, failed to secure financing to buy the property, but the sellers agreed to rent it to him while he sought financing.  (*Id.* ¶ 17.)

During his search, he met defendant Daniel Kurkowski of defendant Kurko Homes. (*Id.* ¶ 18.)  Kurkowski allegedly told Mitchell he could provide funding to purchase the house.  (*Id.* ¶ 19.)  On February 22, 2018, Kurko Homes allegedly did this by (1) purchasing the property from the sellers at the $372,500 purchase price and then (2) selling it to Mitchell on a contract for deed with a $409,750 purchase price.  (*Id.* ¶¶ 19–20, 22; *see also* Mot. to Dismiss, Decl. of Jack E. Pierce, Ex. 1 ("Recorded Contract for Deed"), Mar. 22, 2022, Docket No. 12.)[1]  The loan was set to mature on August 22, 2020, with a balloon payment due at that time.  (Compl. ¶¶ 20, 26; Recorded Contract for Deed ¶ 4.)

---

[1] The Complaint indicates that the 2018 contract for deed as well as the subsequent amendment made in 2020 are attached to and incorporated by the Complaint.  (Compl. ¶¶ 24, 30.)  They are not attached to the Complaint.  Defendants attached the 2018 contract for deed but not the 2020 amendment to their Motion to Dismiss.  At the hearing on this Motion, Mitchell's counsel indicated that the version filed by Defendants is a correct copy.  Although not attached to the Complaint itself, the Court may consider the copy submitted by Defendants as it appears Kurkowski meant to attach it, the contract is necessarily embraced by and does not

Mitchell alleges that Defendants did not make any written disclosures he alleges were required by federal and state law in connection with the loan.  (Compl. ¶¶ 23, 57.)

In 2020, as the loan neared maturation and the balloon payment's due date, Mitchell requested and received an extension setting a new balloon payment due date of March 2021.  (*Id.* ¶¶ 26, 29.)  To get this extension, Mitchell paid an additional $10,000 by August 18, 2020.  (*Id.* ¶¶ 27–28.)  The parties agreed to the new terms in a document entitled "Amendment to Contract for Deed."  (*Id.* ¶ 29.)  Mitchell alleges Defendants did not make any TILA written disclosures before the parties entered into the amendment. (*See id.* ¶ 57.)[2]

In March 2021, Mitchell sold the property and fulfilled the terms of the contract for deed.  (*Id.* ¶ 32.)

## B.    Defendants and Other Alleged Transactions

According to the Complaint, defendants Michael Kurkowski, Marcia Kurkowski, and Daniel Kurkowski are all individuals who reside in Minnesota.   (*Id.* ¶¶ 2–4.) Defendants Kurko Homes, LLC; Drok Holding LLC; VSM Commercial LLC; Kurkowski Real

---

contradict the Complaint on any material issue, and Mitchell does not dispute its authenticity or accuracy. *See Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8ᵗʰ Cir. 1999).

[2] After discussing the initial 2018 contract, the Complaint clearly states Defendants did not make disclosures required by state or federal law.  (Compl. ¶ 23.)  The Complaint does not contain a similar allegation immediately after discussing the 2020 amendment.  Because elsewhere the Complaint alleges generally that Defendants failed to provide any disclosures, (*see id.* ¶ 57), for the purposes of this Motion, the Court concludes that one can make a reasonable inference that Defendants did not provide any disclosures for the 2020 amendment.

Estate Corporation; and Kurkowski Properties, LLC are allegedly Minnesota limited liability companies or corporations.  (*Id.* ¶¶ 5–9.)  The Complaint does not allege the nature or citizenship of defendant VSM Real Estate, LLC.[3]

Mitchell alleges that the individuals Michael, Marcia, and Daniel Kurkowski are the owners and managers of the defendant corporate entities and operate them "as a single entity or enterprise, such that the companies are alter-egos of the individual Defendants and of one another."  (*Id.* ¶ 10.)

According to the Complaint, Defendants engage in financing the purchase of residential homes for individuals who would not qualify for a traditional mortgage.  (*Id.* ¶ 11.)  Defendants allegedly do this by purchasing residential properties directly from the seller themselves and then selling the properties to the actual intended individual purchasers on contracts for deed for more than the price Defendants paid.  (*Id.* ¶ 12.)  The corporate entities were allegedly formed and organized in such a manner as to allow the Defendants to avoid complying with state and federal disclosure and consumer protection laws.  (*Id.* ¶ 14.)

Mitchell alleges that including their transactions with Mitchell, the "Defendants, individually and through their companies, extended at least two 'high cost' loans secured

--------

[3] Indeed, other than in the case caption, the Complaint never mentions VSM Real Estate, LLC even where it lists information about all other parties.  (*See* Compl. ¶¶ 1–9.)

by a dwelling as defined by 12 C.F.R. § 1026.32, within a 12 month period" of the 2018 and 2020 transactions with Mitchell described above.  (*Id.* ¶ 38.)

Mitchell alleges Defendants purchased and then immediately sold residences for prices above their purchase price on contracts for deed once on August 30, 2017, and twice on March 9, 2018.  (*Id.* ¶ 39.)  According to the Complaint, Defendants have also "been involved in the purchase or sale of residential properties in at least 16 other transactions between 2016 and 2021."  (*Id.* ¶ 40.)

## II.   PROCEDURAL HISTORY

On February 25, 2022, Mitchell initiated this action alleging (1) Defendants failed to provide Mitchell with various disclosures required by the TILA when extending Mitchell credit, (2) Defendants charged Mitchell excessive and usurious fees and interest rates under Minnesota law; and (3) Defendants were unjustly enriched by collective various fees and payments from him.  (*Id.* ¶¶ 41–73.)  On March 22, 2022, all defendants except VSM Real Estate[4] filed a joint Motion to Dismiss all claims against them.  (Mot. Dismiss, Mar. 22, 2022, Docket No. 12.)

---

[4] Based on the record, it does not appear that a summons was issued to VSM Real Estate. (*See* Summons Issued, Feb. 25, 2022, Docket No. 4.)  When Defendants' counsel entered an appearance, it did so for all defendants except VSM Real Estate.  (Not. Appearance, Mar. 9, 2022, Docket No. 6.)

**DISCUSSION**

**I.    TRUTH IN LENDING ACT CLAIM**

**A.    Standard of Review**

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court considers all facts alleged in the complaint as true to determine if the complaint states a "claim to relief that is plausible on its face." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The Court construes the complaint in the light most favorable to the plaintiff, drawing all inferences in the plaintiff's favor, accepting the complaint's factual allegations as true and drawing all inferences in the plaintiff's favor. *Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 512 (8th Cir. 2018); *Ashley Cnty. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). The Court, however, is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). In other words, a complaint "does not need detailed factual allegations" but must include more "than labels and conclusions, and a formulaic recitation of the elements" to meet the plausibility standard. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

In reviewing a Rule 12(b)(6) motion to dismiss, the Court may consider the allegations in the complaint as well as "those materials that are necessarily embraced by

the pleadings." *Schriener v. Quicken Loans, Inc.*, 774 F.3d 442, 444 (8ᵗʰ Cir. 2014). The Court may also consider matters of public record and exhibits attached to the pleadings, as long as those documents do not conflict with the complaint. *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8ᵗʰ Cir. 1999).

### B.   Analysis

The TILA requires creditors to make various disclosures to consumers. 15 U.S.C. §§ 1638(a), 1639(a).[5] For the TILA to apply here, Defendants must have been a "creditor." *Id.* The TILA defines a "creditor" as "a person who both (1) **regularly extends** . . . consumer credit . . . and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable." 15 U.S.C. § 1602(g) (emphasis added).

There are three ways one can meet the "regularly extends" prong.[6] Regulations clarify two ways to meet the definition: "[a] person regularly extends consumer credit only if it extended credit . . . more than 25 times (or more than 5 times for transactions

---

[5] The parties dispute whether the Complaint alleged violations under § 1638, § 1639, or both. This distinction may matter to this case because the TILA has different statutes of limitations depending on which section of the TILA is implicated. *See* 15 U.S.C. § 1640(e). Because the Court will grant the Motion on other grounds, the Court will not wade into this dispute or attempt to parse the Complaint to determine whether—construed in the light most favorable to Mitchell—it alleges a § 1639 violation.

Mitchell also contends that the 2020 extension is a new or continuous violation of the TILA. Similarly, the Court need not wade into whether an amendment extending an existing loan in the manner done so here constitutes a new or continuous violation or whether it resuscitated an otherwise time-barred claim based on the 2018 transaction.

[6] The parties do not dispute that the Complaint adequately alleges the second prong.

-8-

secured by a dwelling) in the preceding calendar year" or in "the current calendar year." 12 C.F.R. § 226.2(a)(17)(v) (emphasis added).

15 U.S.C. § 1602 also provides a third way to meet the "regularly extend" prong: by "originat[ing] 2 or more [high-cost mortgages] in any 12-month period." 15 U.S.C. § 1602(g); 12 C.F.R. § 1026.2(a)(17)(v); *see also Cetto v. LaSalle Bank Nat'l Ass'n*, 518 F.3d 263, 273 (4th Cir. 2008); *Goldwater Bank, N.A. v. Kulikowski*, No. 21-10246, 2022 WL 298068, at *3 (D. Mass. Feb. 1, 2022).

A "high-cost mortgage" includes, among other things,

> a consumer credit transaction that is secured by the consumer's principal dwelling, other than a reverse mortgage transaction, if . . . (ii) the total points and fees payable in connection with the transaction . . . exceed—

> (I) in the case of a transaction for $20,000 or more, 5 percent of the total transaction amount.

15 U.S.C. § 1602(bb)(1)(A); *see also* 12 C.F.R. § 1026.32(a)(1).

Defendants contend that the Complaint does not allege that they are creditors under these definitions. Mitchell responds that the Complaint alleges (1) that Kurko Homes and Daniel Kurkowski as Kurko Homes's agent meet the definition, pointing to the loans made to Mitchell and Paragraph 39 of the Complaint and (2) that Defendants collectively meet the definition by combining actions each distinct defendant took.

However, even when construed in the light most favorable to Mitchell, the Complaint does not contain sufficient factual allegations for the Court to draw a

reasonable inference either (1) that any individual defendant is a TILA creditor or (2) that Defendants can be considered collectively.

### 1.    Creditor by Extending Credit More Than 25 Times

The Complaint plainly does not allege Defendants collectively extended credit more than 25 times in the preceding or current calendar year for either the 2018 or the 2020 transaction.  By the Court's count, at most, the Complaint only alleges a total of 21 possible transactions from 2016 to 2021, including the transactions with Mitchell.[7]

Therefore, for Mitchell's TILA claim to survive for either transaction, Defendants must have either (1) extended credit secured by a dwelling 5 or more times in a single calendar year in 2017, 2018, 2019, or 2020 or (2) originated 2 or more high-cost mortgages in a relevant 12-month period.[8]

### 2.    Creditor by Extending Credit Secured by Dwelling More Than 5 Times

The Complaint also does not adequately allege that Defendants collectively extended credit secured by a dwelling more than 5 times in the preceding or current

---

[7] The Court arrives at 21 based upon the 3 in Paragraph 39, the 16 in Paragraph 40, and counting the 2018 and 2020 transactions with Mitchell separately.  (*See* Compl. ¶¶ 39–40.)

[8] The definitions raise two other issues: (1) whether the number of transactions is inclusive or exclusive of the transaction with the plaintiff at issue in a TILA case and (2) whether the TILA requirements can retroactively attach to a transaction if a defendant does not meet a definition of "creditor" at the time of a transaction but later does.  Neither of the two cases Defendants mentioned in response to the Court's question on the first issue addresses whether the numbers are inclusive or exclusive of the transaction at issue.  *See Beltran v. Robert M. Anderson Tr.*, 210 F. Supp. 3d 1105, 1109 (D. Minn. 2016); *Tatone v. SunTrust Mortg., Inc.*, 857 F. Supp. 2d 821, 834 (D. Minn. 2012).  As the parties did not address these issues in their filings and it is unnecessary to resolve this Motion, the Court will not decide these issues at this time.

calendar year for either the 2018 or the 2020 transaction.  First, the Complaint specifically alleges 1 transaction in 2017, 3 transactions (including 1 with Mitchell) in 2018, 1 transaction (with Mitchell) in 2020, and 16 other transactions between 2016 and 2021 but never states what years they occurred in.  Even if all these transactions otherwise meet the statutory requirements[9] and that the Court should consider them collectively against all Defendants, the Complaint includes no actual facts that support a conclusion that Defendants extended credit secured by a dwelling more than 5 times in 2017, 2018, 2019, or 2020, the relevant years for Mitchell's transactions.  It is possible, for example, that all 16 of these additional transactions occurred in 2021 and thus Defendants only became TILA creditors beginning with the calendar year after the Amendment.  Or perhaps all 16 transactions were sufficiently spread out so that Defendants never engaged in more than 5 in a single year, so they never qualified as TILA creditors.

Second, even if the Court assumes at least 5 of these transactions took place in a single relevant year, the Complaint only alleges that "Defendants have been **involved** in the purchase or sale of residential properties in at least 16 other transactions between 2016 and 2021."  (*Id.* ¶ 40 (emphasis added).)  The TILA, however, does not designate someone a creditor merely be being "involved" in a purchase or sale; creditors must extend credit.  As Defendants point out, a real estate agent is "involved" in a real estate

---

[9] To be clear, the Court does not find that these or any other transactions meet the required definitions but merely notes that even if they do, the Complaint still does not adequately allege that Defendants are creditors.

transaction. As are inspectors, stagers, appraisers, and purchasers. The Complaint does not allege these 16 transactions included Defendants extending credit nor that any extension of credit for these was secured by a dwelling. While the Complaint need not contain detailed factual allegations, these bare assertions require the Court to go beyond reasonable inferences to make logical leaps and assume facts not contained in the Complaint.[10] To be sure, the Complaint does state that Defendants extended credit secured by a dwelling more than 5 times in 2018 and 2020. (*Id.* ¶ 37.) This, however, is a mere formulaic recitation of an element Mitchell must prove for which the Complaint lacks any articulable facts and is, therefore, insufficient to meet the plausibility standard. *See Twombly*, 550 U.S. at 555.

### 3. Creditor by Originating Two or More High-Cost Mortgages

The Complaint, however, may adequately allege that collectively Defendants were creditors by originating two high-cost mortgages within a 12-month period because, in addition to the transaction with Mitchell in February 2018, the Complaint identifies one transaction in August 2017 and two transactions in March 2018.[11] Still, even assuming (1) the Complaint adequately alleges these transactions are high-cost mortgages and (2) that

---

[10] For similar reasons, these 16 transactions cannot support a finding that Defendants extended credit 25 times in a single year or extended a high-cost mortgage at least 2 times.

[11] Applying the high-cost mortgages definition to these transactions raises another issue: whether a contract for deed qualifies as a mortgage under the TILA. Defendants argue in opposition to the state law claims that contracts for deeds are not mortgages and that Mitchell's loan was a contract for deed, not a mortgage. Just as with the issues raised above, the Court will not decide this issue here as it is unnecessary to resolving this Motion.

the definition is inclusive of Mitchell's transaction and/or (3) that later transactions can

cause the TILA's requirements to retroactively attach, the Complaint does not allege

which defendant originated these transactions other than the one involving Mitchell.

Thus, the only possible way for these transactions to cause Defendants to meet the TILA's

definition of creditor is if a transaction by any one defendant can be counted collectively

towards all defendants.[12]

Mitchell contends that all transactions involving Defendants can be considered

collectively toward the number of transactions necessary to meet any of the TILA creditor

definitions, because he alleges they operated as a single creditor enterprise.  Such a

theory may allow Defendants to be considered TILA creditors even if no single defendant

would be considered a TILA creditor based on the Defendant's own individual actions.

*See Ward v. Shad*, No. 18-01933, 2019 WL 1084219, at *3–4 (D. Minn. Mar. 7, 2019)

(holding that transactions from multiple legal entities could be aggregated together to

---

[12] Mitchell also asserts that the Complaint alleges Kurko Homes and Daniel Kurkowski as its agent extended high-cost loans to Mitchell and others citing Paragraph 39.  Paragraph 39 does not, however, state which defendant extended these loans.  Therefore, the only loans for which one can reasonable infer which defendants were directly involved are the transactions with Mitchell in 2018 and 2020 extended by Kurko Homes with Daniel Kurkowski allegedly acting on behalf of Kurko Homes.  As these were not in the same 12-month period, they cannot satisfy this definition alone.  Moreover, unless all Defendants can be held liable for the actions of the other Defendants, even if this were adequate as to Kurko Homes and Daniel Kurkowski, it would be insufficient to implicate any other defendant.

Mitchell's argument as to Daniel Kurkowski raises yet another issue the Court will not resolve: whether an agent of a lender can be a creditor under the TILA by virtue of a principal-agent relationship.

meet the definition of "creditor").  *But see Beltran v. Robert M. Anderson Tr.*, 210 F. Supp. 3d 1105, 1109 (D. Minn. 2016) (refusing to decide whether the TILA allows for aggregating transactions together across legal entities).[13]  Mitchell argues that Defendants should be considered collectively via either a joint venture or a veil piercing, alter ego theory.  As pleaded, both these arguments fail, and Defendants cannot be considered collectively.

A joint venture is created when two or more persons combine money, property, time, or skills in a business without forming a specific corporation and agree to share in profits and losses.  *See Rehnberg v. Minn. Homes, Inc.*, 52 N.W.2d 454, 456–57 (Minn. 1952)  To establish a joint venture under Minnesota law, the Court considers the unique facts of the case.  *Id.* at 457.  At a minimum, the party seeking to establish a joint venture must plead and prove: (1) the existence of a contract, express or implied, showing that the parties entered into a joint venture; (2) that the parties combined "their money, property, time, or skill in some common undertaking;" (3) the existence of "a proprietary interest and right of mutual control over the subject matter of the property engaged therein;" and (4) the existence of an express or implied agreement that the parties share the profits of the venture.  *Id.*; *accord A.P.I., Inc. v. Home Ins. Co.*, 706 F. Supp. 2d 926, 942 (D. Minn. 2010).

---

[13] The Court does not decide whether the TILA allows for this aggregation.  Instead, the Court merely assumes for this Motion that it is permissible at least in some circumstances.

When a court pierces the corporate veil, it disregards the corporate entity to hold those otherwise protected by the corporation liable for the entity's actions. *See Hoyt Props., Inc. v. Prod. Res. Grp., L.L.C.*, 736 N.W.2d 313, 318 (Minn. 2007)   Under the alter ego theory, Minnesota courts look at the reality, and not the form, with respect to how the corporation operated to determine whether to pierce the corporate veil. *Id.* Veil-piercing is an equitable remedy, permitted only in limited circumstances where (1) the corporation fails to maintain a sufficiently separate identity such that the corporation is an alter ego or mere instrumentality, and (2) failure to pierce the veil would result in some fundamental unfairness, fraud, or injustice. *See Victoria Elevator Co. v. Meriden Grain Co.*, 283 N.W.2d 509, 512 (Minn. 1979).  In considering the first prong, courts consider factors including "insufficient capitalization for purposes of corporate undertaking, failure to observe corporate formalities, nonpayment of dividends, insolvency of debtor corporation at time of transaction in question, siphoning of funds by dominant shareholder, nonfunctioning of other officers and directors, absence of corporate records, and existence of corporation as merely facade for individual dealings." *Id.*

The Complaint does not allege facts sufficient to support either theory.  The Complaint contains one sentence related to these theories: "Defendants Michael Kurkowski, Marcia Kurkowski, and Daniel Kurkowski are the owners and managers of the Defendant limited liability companies and corporation, and operate the same as a single entity or enterprise, such that the companies are the alter-egos of the individual

Defendants and of one another." (Compl. ¶ 10.) This, however, is a mere label and legal conclusion. The Complaint does not allege any actual facts supporting a reasonable inference that Defendants operated either as a joint venture or as alter egos. This is insufficient to meet Mitchell's pleading burden. *See N. Cent. EMS Corp. v. Bound Tree Med., LLC*, No. 15-2793, 2016 WL 544472, at *5–6 (D. Minn. Feb. 10, 2016) (dismissing a claim predicated on an alter ego theory where the plaintiff did not plead "any facts directly addressing either prong of the operative test" or the factors courts consider); *In re Currency Conversion Fee Antitrust Litig.*, 265 F. Supp. 2d 385, 426 (S.D.N.Y. 2003) (similar in a TILA case). Because the Complaint fails to adequately plead either a joint venture or a veil piercing theory, the Complaint also fails to adequately plead that the Defendants can be considered collectively.

In sum, because the Complaint neither adequately alleges Defendants can be considered collectively, nor that any individual Defendant engaged in transactions sufficient to meet the definition of "creditor" under the TILA, the Complaint fails to adequately allege any Defendant is a TILA creditor. Because the TILA only applies to creditors, the Complaint does not allege Defendants violated the TILA.

Altogether, Mitchell's Complaint is too sparse on details to support his theories. In addition to the problems identified above, other than naming the corporate entities in the jurisdictional section, it never mentions them—other than Kurko Homes—again. The jurisdictional section does not even name VSM Real Estate. Similarly, the Complaint never

mentions Michael or Marcia Kurkowski outside of the jurisdictional section and Paragraph 10.  In other words, the Complaint lumps all defendants together as "Defendants."  This is insufficient to survive a motion to dismiss.  *Tatone v. SunTrust Mortg., Inc.*, 857 F. Supp. 2d 821, 831 (D. Minn. 2012) ("A complaint which lumps all defendants together and does not sufficiently allege who did what to whom, fails to state a claim for relief because it does not provide fair notice of the grounds for the claims made against a particular defendant.").

Even assuming all facts in the Complaint to be true, the Court cannot not "draw the reasonable inference that the defendant[s are] liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  The Court will, therefore, dismiss the TILA claim against the Defendants who filed this Motion.[14]

## II.   STATE LAW CLAIMS

Defendants contend that if the Court dismisses the TILA claim, it should also decline to exercise supplemental jurisdiction over the state law claims and dismiss them as well.

The sole basis for the Court's jurisdiction over the state law claims is 28 U.S.C. § 1367(a), which permits a federal district court to exercise supplemental jurisdiction over

---

[14] There may be a similar lack of detail as to the state law claims.  Because the Court will dismiss the TILA claim and the state law claims on other grounds, the Court will not address any deficiencies in the Complaint related to these issues or the statute of limitations Defendants also raised.

claims that are a part of the same case or controversy as the claims that fall within the district court's original jurisdiction.  The Court may decline to exercise supplemental jurisdiction over a claim if "the district court has dismissed all claims over which it has original jurisdiction."   28 U.S.C. § 1367(c)(3).   "The district court is afforded broad discretion in determining whether to exercise supplemental jurisdiction." *Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 359 (8th Cir. 2011).   When deciding whether to exercise supplemental jurisdiction, courts consider factors such as "judicial economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988); *see also Quinn v. Ocwen Fed. Bank FSB*, 470 F.3d 1240, 1249 (8th Cir. 2006).   In most cases where all the federal claims are dismissed early in the case, courts should decline to exercise supplemental jurisdiction and dismiss the state law claims.  *Ivy v. Kimbrough*, 115 F.3d 550, 552–53 (8th Cir. 1997).

As the Court will dismiss the TILA claim—the only claim over which the Court had original jurisdiction—and the case is still at a very early stage, the Court will decline to exercise supplemental jurisdiction over the state law claims. *See id.*  Mitchell also does not argue that even if the Court dismisses the TILA claim, it should exercise supplemental jurisdiction over the state law claims.

III.   **STAYING ENTRY OF JUDGMENT AND VSM REAL ESTATE**

Despite the Court dismissing the claims against the Defendants who filed this Motion, two issues remain.

-18-

First, at the hearing on this Motion, Mitchell's counsel stated that Mitchell would be able and willing to amend the Complaint if the Court found it contained insufficient factual allegations.  As discussed above, the Court concludes that the Complaint is insufficient to plead a cause of action under the TILA.  Therefore, the Court will exercise its inherent authority and will stay entry of judgment dismissing this case for 30 days to permit Mitchell to file a motion to amend under Local Rule 15.1.  *See S. Glazer's Wine & Spirits, LLC v. Harrington*, No. 21-1254, 2022 WL 912032, at *1 (D. Minn. Mar. 29, 2022) (exercising inherent authority to stay an order).  If Mitchell files such a motion within 30 days, the Court will extend the stay while it evaluates whether to grant the motion.

Second, VSM Real Estate did not join the Motion to Dismiss.  There appears to be no reason to differentiate VSM Real Estate from the other parties.  The Complaint alleges even less as to VSM Real Estate as it is not even included in the jurisdictional section and is only named in the case caption.  Although the Court has the power to sua sponte dismiss a complaint under Rule 12(b)(6), it may not do so before service of process.  *Smith v. Boyd*, 945 F.2d 1041, 1043 (8th Cir. 1991).  The record does not indicate that a summons was issued to VSM Real Estate or that it has been served with the Complaint.  So, the Court may not sua sponte dismiss the claims against VSM Real Estate.

A plaintiff, however, is responsible for serving a summons and complaint on all defendants in a timely manner.  Fed. R. Civ. P. 4(c)(1).  If a plaintiff fails to serve a defendant within 90 days, the court "must dismiss the action without prejudice against

-19-

that defendant or order that service be made within a specified time" unless the plaintiff shows good cause for the failure.  Fed. R. Civ. P. 4(m).

More than 90 days have elapsed since the Complaint was filed apparently without service to VSM Real Estate.  Therefore, the Court will dismiss the action without prejudice against VSM Real Estate unless Mitchell shows cause within 30 days as to why the Court should not do so for failure to comply with Federal Rule of Civil Procedure 4.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants Michael Kurkowski, Marcia Kurkowski, Daniel Kurkowski, Kurko Homes, LLC, Drok Holding LLC, VSM Commercial LLC, Kurkowski Real Estate Corporation, and Kurkowski Properties, LLC's Motion to Dismiss [Docket No. 12] is **GRANTED**;

2. This action is **DISMISSED without prejudice** with respect to Defendants Michael Kurkowski, Marcia Kurkowski, Daniel Kurkowski, Kurko Homes, LLC, Drok Holding LLC, VSM Commercial LLC, Kurkowski Real Estate Corporation, and Kurkowski Properties, LLC;

3. Entry of Judgment is **STAYED** for thirty (30) days pending Plaintiff filing a motion to amend under Local Rule 15.1; and

4. Plaintiff is **ORDERED** to show cause in writing within thirty (30) days of entry of

this Order as to why his claims should not be dismissed against Defendant VSM

Real Estate, LLC.



DATED:  November 23, 2022
at Minneapolis, Minnesota.

_____
JOHN R. TUNHEIM
United States District Judge